United States District Court
Southern District of Texas
**ENTERED**
June 17, 2025
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| LACRECHA M.,[1] *Plaintiff,* | § § § | |
| v. | § | No. 4:24-cv-1108 |
| LELAND DUDEK, Acting Commissioner of Social Security, *Defendant.* | § § § § § | |

## MEMORANDUM AND ORDER

Plaintiff Lacrecha M. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. Pl.'s Compl., ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). This case comes before the Court on review of the Social Security Administration ("SSA") Commissioner's decision that Plaintiff, whom the Commissioner previously found to be disabled, subsequently experienced medical improvement of her condition and no longer qualified for supplemental security income ("SSI") under title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1382c.[2]

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On April 18, 2024, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order, ECF No. 5.

1

The parties filed cross motions for summary judgment. Pl.'s MSJ, ECF No. 15; Def.'s MSJ, ECF No. 16. Plaintiff seeks an order rendering benefits or remand for further consideration, arguing that the ALJ's finding of medical improvement was not supported by substantial evidence. ECF No. 15. Commissioner counters that the ALJ's decision is supported by substantial evidence, and the ALJ properly considered the record evidence. ECF No. 16. Based on the briefing, the record, and the applicable law, the Court finds that ALJ's determination is supported by substantial evidence. Thus, the Court denies Plaintiff's motion for summary judgment, grants Commissioner's motion for summary judgment, and affirms the ALJ's decision.

## I. BACKGROUND

Plaintiff originally filed her SSI application on May 21, 2007. R. 209–14.[3] The SSA determined Plaintiff was disabled as of May 18, 2007. R. 12. On October 20, 2011 and January 12, 2018, in continuing case reviews, the SSA determined that Plaintiff was still disabled. R. 12, 61–68.

After a hearing on August 1, 2023, where Plaintiff and a vocational expert ("VE") testified and Plaintiff was represented by an attorney, R. 33–60, the ALJ affirmed State Agency doctors' determination that Plaintiff was no longer disabled as of April 2, 2021 and had not become disabled again since that date. 12–27. In the

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 9.

decision, the ALJ utilized the seven-step analysis used to determine whether to cease benefits, which is explained in greater detail below. R. 12–27 (citing 20 C.F.R. § 416.994).

At step one, the ALJ determined that the date of the most recent medical decision that found Plaintiff continued to be disabled, also known as the "comparison point decision" ("CPD"), is the January 12, 2018 determination. R. 14. At the time of the CPD, Plaintiff had the medically determinable impairment of schizophrenia, which was found to functionally equal the listing at 20 C.F.R. § 416.920(d). R. 14. The ALJ found that based on the medical evidence, since April 2, 2021, through the date of decision, Plaintiff has had and continues to have the following medically determinable impairments: schizophrenia, obesity, migraines, and rheumatoid arthritis. R. 14. The ALJ next found that since April 2, 2021, through the date of this decision, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR §§ 416.925 and 416.926. [4]

---

[4] In accordance with the applicable SSA regulations, the ALJ evaluated the "paragraph B" criteria, finding: (1) mild limitation in understanding, remembering, or applying information; (2) moderate limitation in interacting with others; (3) moderate limitation in concentrating, persisting, or maintaining pace; and (4) mild limitation in adapting or managing oneself. R. 15–16. The ALJ also considered the "paragraph C" criteria, finding it unmet because "the record does not document BOTH medical treatment, mental health therapy, psychosocial supports or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorders AND a marginal adjustment to adapt to changes in her environment or to demands that are not already part of her daily life." R. 16.

At step two, the ALJ found that medical improvement occurred on April 2, 2021. R. 16 (citing 20 C.F.R. § 416.994(b)(1)(i)). At step three, the ALJ next found that the medical improvement is related to the ability to work because, by April 2, 2021, Plaintiff's CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD. R. 17. (citing 20 C.F.R. § 416.994(b)(2)(iv)(A)).[5] Because the medical improvement is related to the ability to work, the Commissioner proceeded to step five. At step five, the ALJ found that "[s]ince April 2, 2021, the claimant has continued to have a severe impairment, schizophrenia and obesity, or combination of impairments R. 17 (citing 20 C.F.R. § 416.994(b)(5)(v)).

At step six, the ALJ determined that since April 2, 2021, based on the current impairments, Plaintiff has had the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except she cannot climb ladder, ropes, or scaffolds; occasionally climb stairs and ramps and occasionally stoop, kneel, crouch, and crawl; cannot work around loud noise, such as at a construction site; or around bright lights, such as in direct sunlight or around strobe lights; frequently reach in all directions, bilaterally; frequently handle, finger, and feel, bilaterally; and occasionally use bilateral foot controls; have no exposure to concentrated pulmonary

---

[5] The Court finds this reasoning circular, but overall the opinion is supported by substantial evidence and legally correct.

4

irritants, such as industrial strength fumes, gases, odors, dust, or poor ventilation; however, she can use household cleaners; cannot work in extreme heat, cold, or humidity, such as outside in a Texas summer or in a freezer; can understand, remember, and apply information in order to carry-out simple instructions and perform simple tasks; can concentrate, keep pace, and persist for two-hour periods with customary breaks during an eight-hour workday. She cannot perform work requiring specific production rate (such as assembly line work) but can have an end of the day quota; can occasionally interact with supervisors, coworkers, and the general public; respond appropriately to changes in the work setting; accept instructions; and make decisions in a work setting. R. 18. The ALJ found that Plaintiff has no past relevant work,[6] has a limited education, and on April 2, 2021, was younger individual R. 24 (citing 20 C.F.R. §§ 416.963; 416.964; 416.965).

At step seven, the ALJ found that "[s]ince April 2, 2021, considering Plaintiff's age, education, work experience, and residual functional capacity based on the current impairments, Plaintiff has been able to perform a significant number of jobs in the national economy (20 CFR §§ 416.960(c) and 416.966). R. 25. The ALJ concluded that Plaintiff's disability ended on April 2, 2021, and she has not become disabled again since that date, through the date of this decision. R. 26 (citing

---

[6] Transferability of job skills is not an issue because Plaintiff does not have past relevant work. R. 24 (20 C.F.R. § 416.968).

5

20 C.F.R. § 416.994(b)(5)(vii)).

The Appeals Council denied Plaintiff's request for review, upholding the ALJ's decision. R. 1–6. Plaintiff now seeks judicial review of that decision pursuant to 42 U.S.C §§ 405(g) and 1382(c)(3). ECF No. 1.

## II.     STANDARD OF REVIEW OF COMMISSIONER'S DECISION.

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of Commissioner, even if the evidence preponderates against Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for Commissioner's decision and involves more than a search for evidence supporting Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

### III. SUPPLEMENTAL SECURITY INCOME UNDER THE ACT.

The Act permits Supplemental Security Income ("SSI") payments to the aged, blind, and disabled to assure that their income does not fall below the poverty line. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.110. Applicants must prove "disability" under both sections. *See* 42 U.S.C. § 1382c(a)(3)(A).

"Disability" is defined as being "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). "The suffering of some impairment does not establish disability; a claimant is disabled only if he is 'incapable of engaging in any substantial gainful activity.'" *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1987)).

## IV. CESSATION OF DISABILITY.

If Plaintiff is entitled to SSI, her continued entitlement to those benefits must be reviewed periodically. 20 C.F.R. § 416.994(a). For disabled adults, the Commissioner must determine if there has been "medical improvement"[7] in the recipient's impairments and, if so, whether this medical improvement is related to the recipient's ability to work. 20 C.F.R. § 416.994(b). A disability recipient's benefits "may be terminated only if substantial evidence demonstrates both that

---

[7] "Medical improvement" is any decrease in the medical severity of a recipient's impairments which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. 20 C.F.R. § 416.994(b)(1)(i). A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, or laboratory findings associated with the recipient's impairments. *Id.*

'there has been any medical improvement' and that 'the individual is now able to engage in substantial gainful activity.'" *Hallaron v. Colvin*, 578 F. App'x 350, 353 (5th Cir. 2014) (citing 42 U.S.C. § 1382c(a)(4)(A)).

A disability recipient's benefits will be terminated if the Commissioner determines: (a) that there has been medical improvement in the individual's impairments related to the individual's ability to work; (b) or that one or more exceptions to medical improvement applies; and (c) in addition to (a) or (b), the individual is currently able to engage in substantial gainful activity. *See* 20 C.F.R. § 416.994. To accomplish this, the Commissioner uses the following analysis:

> 1. At the first step, the Commissioner must consider whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. If so, disability will be found to continue.
>
> 2. If the claimant's impairments do not meet or equal a listing, then, at step two, the Commissioner must determine whether there has been medical improvement compared to the claimant's disabilities at the CPD, time of the last favorable decision. If so, then step three is considered; if not, then the review proceeds to step four.
>
> 3. If there has been medical improvement, then, at step three, the Commissioner must determine whether it is related to the claimant's ability to work, i.e., whether or not there has been an increase in residual functional capacity based on the impairment(s) at the most recent favorable medical determination. If the medical improvement is not related to the ability to work then, the Commissioner proceeds to step four. If it is related to the ability to work, then the Commissioner proceeds to step five.
>
> 4. If there was no medical improvement at step two, or if the medical improvement was not related to the claimant's ability to work at step

three, the Commissioner must determine whether an exception applies. If no exception applies, then disability continues. If one of the first group of exceptions applies to medical improvement, then the Commissioner will proceed to the next step. If an exception from the second group of exceptions to medical improvement applies, then the Commissioner will find that the claimant's disability has ended.

5. If there has been medical improvement related to the claimant's ability to do work, or if one of the first group of exceptions to medical improvement applies, then the Commissioner must consider whether the claimant's current impairments in combination are severe. If the claimant's impairments are not severe, then the claimant is no longer disabled. If they are severe, then the analysis proceeds to the next step.

6. If the impairments are severe, the Commissioner will assess the claimant's residual functional capacity in light of current impairments and determine whether the claimant is able to return to past relevant work. If so, then disability has ended. If not, then the analysis proceeds to the next step.

7. At the last step, the Commissioner must determine whether the claimant can perform other work, given the claimant's age, education, work experience, and residual functional capacity. If so, then the claimant is no longer disabled. If not, then disability continues.

*Williams v. O'Malley*, No. CV 5:23-00911, 2024 WL 2150275, at *3 (W.D. La. Apr. 26, 2024), *adopted*, No. CV 5:23-0911, 2024 WL 2140256 (W.D. La. May 13, 2024) (paraphrasing 20 C.F.R. § 416.994(b)(5)). If at any point in the analysis, the Commissioner determines there is sufficient evidence to find the claimant is still unable to engage in substantial gainful activity, then the review ceases and benefits continue. *See* 20 C.F.R. § 416.994(b)(5). "In a continuing disability review applying the medical improvement standard, the government must, in all relevant respects, prove that the person is no longer disabled." *Williams*, 2024 WL 2150275, at *4

(citing *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)).

V.     **COMMISSIONER IS ENTITLED TO SUMMARY JUDGMENT.**

Plaintiff raises two arguments in support of her request for remand. ECF No. 15. Plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ rejected all medical opinions in the record. ECF No. 15 at 6. Second, Plaintiff argues that the ALJ's decision that Plaintiff experienced medical improvement related to her ability to work is erroneous because the record shows only intermittent improvement and waxing and waning symptoms. ECF No. 15 at 6.[8]

    A.     **The ALJ Did Not "Play Doctor" and Rely on her Lay Interpretation of Raw Medical Data.**

"When the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error." *Brian K. L. v. Comm'r of Soc. Sec.*, No. 4:20-CV-2810, 2022 WL 902641, at *6 (S.D. Tex. Mar. 28, 2022) (quoting *Garcia v. Berryhill*, No. 17-CV-263, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018) (collecting cases)); citing *Allen v. Saul*, No. 4:19-cv-1575, 2020 WL 5412630, at *7 (S.D. Tex. Sept. 9, 2020); *Beachum v. Berryhill*, No. 17-CV-95, 2018 WL 4560214, at *4 (W.D. Tex. Sept. 21, 2018)). "The principle that an ALJ should not substitute [her] lay opinion for the medical

---

[8] Plaintiff's motion for summary judgment largely conflates and confuses these two arguments.

11

opinion of experts is especially profound in a case involving a mental disability." *Viola E. v. O'Malley*, No. 4:24-CV-1107, 2025 WL 553056, at *12 (S.D. Tex. Feb. 19, 2025) (citing *Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018) (quoting *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)); *Brian K. L.*, 2022 WL 902641, at *7).

In addressing the record's only medical opinions, the ALJ summarized and opined:

> At the initial level, State Agency psychologist, Renee Eisenhauer, Ph.D., completed an assessment indicating that there was insufficient evidence to render a determination secondary to the claimant's failure to cooperate. At the reconsideration level, State Agency psychologist, Maryann Wharry, Psy.D. opined that the claimant's mental impairment was not severe and resulted in a mild limitation in her ability to understand, remember or apply information; no limitation in her ability to interact with others; a mild limitation in her ability to concentrate, persist or maintain pace; and no limitation in her ability to adapt or manage herself. The undersigned has considered and found these assessments unpersuasive, as they are simply inconsistent with the longitudinal record, which documents ongoing treatment related to the schizophrenia. The longitudinal record and the claimant's subjective reports of symptoms support a conclusion that she is limited as set forth in this decision. It is also noted that the State Agency offered no assessment of the claimant's functioning from a physical perspective.

R. 22–23 (internal citations omitted). But, in formulating Plaintiff's RFC, the ALJ extensively covered Plaintiff's medical records and treatment notes, which included numerous normal findings from her mental status assessments, statements from Plaintiff that she was stable on medications and did not experience any

hallucinations or depressive symptoms. R. 429–571.[9]

Although the ALJ did not rely on the above medical opinions, this is not a case where the ALJ "played doctor" and interpreted raw medical data to formulate her RFC determination. Rather, the ALJ relied on years' worth of medical treatment notes that included examination results, Plaintiff's complaints, doctors' interpretations of the examination findings and opinions based on their examinations of Plaintiff. *See Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *4 (5th Cir. June 14, 2023) ("the ALJ examined Wills's extensive medical history documenting such matters as test results, physicians' interpretations of those tests, diagnoses, treatments and procedures, and information regarding her recovery from those procedures. . . . The record convinces us that the ALJ did not improperly draw medical opinions from raw data but properly examined the extensive medical documentation."). Moreover, the rejected medical opinions assessed fewer limitations than those determined by the ALJ[10]—the ALJ's RFC determination was

---

[9] Mental health treatment records from Bluebonnet Clinic, dated December 19, 2019 through June 21, 2023.

[10] One State Agency examiner could not assess limitations because Plaintiff failed to provide medical records or attend the scheduled examination, and the other State Agency examiner found "a mild limitation in her ability to understand, remember or apply information; no limitation in her ability to interact with others; a mild limitation in her ability to concentrate, persist or maintain pace; and no limitation in her ability to adapt or manage herself." R. 22 – 23. The ALJ however, found greater restrictions: (1) mild limitation in understanding, remembering, or applying information; (2) moderate limitation in interacting with others; (3) moderate limitation in concentrating, persisting, or maintaining pace; and (4) mild limitation in adapting or managing oneself. R. 15–16.

more favorable to Plaintiff. This is not reversible error. *See Wills*, 2023 WL 4015174, at *3 (even if ALJ relied on faulty opinions, "Wills fails to show this would constitute error. That is particularly so here where the ALJ acknowledged the shortcomings of the reports and proceeded to incorporate additional symptoms in imposing her *more restrictive* limitations — that is, more favorable to Wills — than those previously suggested.").[11]

### B. The ALJ Was Not Required To Include a Sustainability Finding.

Plaintiff argues that the ALJ erred by not finding her schizophrenia symptoms waxed and waned. ECF No. 15 at 10. Specifically, Plaintiff argues that the ALJ erroneously rejected inclusion of a sustainability finding based on her interpretation of Plaintiff's subjective complaints and rejection of Plaintiff's GAF scores of 40 but not based on her diagnosis of schizophrenia. R. 15 at 10.

In a situation where the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms, the Fifth Circuit noted that "[a] finding that a

---

[11] As discussed below, Plaintiff's RFC arguments related to the global assessment of functioning ("GAF") scores and other citations to the medical record essentially ask the Court to reweigh the evidence, which is not permitted. *See Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). Furthermore, although Plaintiff does not expressly raise as an issue, it appears that the ALJ assessed the GAF scores under the incorrect standard. Even so, this purported error is inconsequential as GAF scores are non-determinative of disability and the ALJ adequately explained why she rejected the scores. *See Andrews v. Astrue*, 917 F. Supp. 2d 624, 638 (N.D. Tex. 2013) (finding the ALJ properly rejected the GAF score where "the ALJ recounted the content of Dr. Simpson's report and then pointed out that the GAF score was a subjective measurement that Dr. Simpson had assessed without administering any psychological tests to Andrews," noting that "a GAF score is not determinative of a claimant's ability to work.") (collecting cases).

claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002) (quotation omitted); *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005) (quotation omitted). "Without such a showing, the claimant's ability to maintain employment is subsumed in the RFC determination." *Perez*, 415 F.3d at 465; *accord Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) ("We have specifically rejected the contention that, under *Watson*, the ALJ must in every decision articulate a separate and explicit finding that a claimant can maintain a job on a sustained basis.").

The ALJ thoroughly addressed Plaintiff's ability to sustain employment, specifically addressing the same arguments Plaintiff raises here: "the claimant has consistently been rendered [GAF] scores of 40. The representative [] argued that the symptoms associated with the claimant's diagnosed schizophrenia wax and wane, by nature; and based on records reflecting persistent GAF scores of 40, there has been no medical improvement." R. 23. The ALJ rejected these arguments, explaining:

> The undersigned, however, does not find these arguments convincing in light of the overwhelming objective evidence of record, which documents the claimant's persistent reports that she was doing well; is stable on medications; had no issues with medications; was

15

> experiencing no depressive symptoms; and her sleep, appetite, focus, and concentration were within normal limits. . . . the record reflects only intermittent reports of symptoms; and there is only one treatment note dated June 21, 2023, that significantly differs from other records in describing the nature and severity of her mental symptoms. In this report the claimant expressed that she was unable to work due to her labile mood; was down a lot; and experienced symptoms including crying spells, decreased energy, irritability, mood swings, and persistent anxiety. The mental status examination, however, was unremarkable and following this evaluation, changes were made to medications.

R. 23 (internal citations omitted). The ALJ also noted that Plaintiff testified to several deaths in her family that prompted altering the dosages of her medications, but found "nothing in the record . . . suggests that despite treatment, [Plaintiff] will not be able to adjust to these deaths" and the treatment records months after indicated Plaintiff reported that she traveled out of state and she was doing well, had no depressive symptoms, and her focus, concentration, sleep, and appetite were well. R. 23.

In rejecting Plaintiff's arguments about her GAF scores and schizophrenia symptoms, the ALJ explained:

> while GAF scores are sometimes used to describe a person's relative mental status, it has been discontinued by the Agency because of the subjective nature of the rating. A GAF score of 40, generally reflects that the individual has some impairment in reality, testing, or communication . . . . In this case, however, mental status examinations have consistently found the claimant to be well oriented with logical thought processes, normal speech, normal behavior, a cooperative attitude, appropriate grooming, a euthymic mood with appropriate affect, and no perceptual alterations. . . . treatment notes from May 2018 to May 2023 consistently reflect that the claimant is doing well on

16

> medications, has no issues with medications, and can focus and concentrate within normal limits. Further, as discussed above, mental status examinations have been unremarkable. Therefore, the clinic assessments and the claimant's reports are not consistent with a GAF of 40. The undersigned finds this case to be a good example of how a subjective GAF score may not be consistent with treatment notes and mental status examinations. . . . in many instances, other evidence may outweigh GAF ratings. Such is the case here, where the use of the GAF scores to describe the severity of the claimant's mental health symptoms are not only unsupported by agency policy, but by written descriptions of the claimant over a period of several years.

R. 23–24 (internal citations omitted). There is no indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the RFC. As shown above, the ALJ addressed Plaintiff's raised concerns about the nature of her symptoms in determining Plaintiff's RFC—either accounting for them in her RFC determination or finding that they were not supported by the record. The ALJ found no support for that argument in Plaintiff's briefing or in the record. R. 23–24. Plaintiff essentially requests that the Court reweigh the evidence and reach a different outcome than the ALJ's determination. This is not appropriate. *See Garcia*, 880 F.3d at 704.

Importantly, Plaintiff does not provide evidence disputing the ALJ's analysis or showing that Plaintiff's impairments waxed and waned—she disagrees with the decision, asking this Court to reweigh the evidence. *See Pena v. Saul*, No. 7:19-CV-0005, 2019 WL 8223588, at *23 (S.D. Tex. Dec. 26, 2019), *adopted*, No. 7:19-CV-00005, 2020 WL 1234281 (S.D. Tex. Mar. 13, 2020) ("Plaintiff has not shown that

her mental health symptoms wax and wane in a way that precludes employment even while on medication.") (citing *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Only Plaintiff's testimony and one treatment note indicated more severe symptoms than the notes in the record over several years. This is not sufficient to show waxing and waning symptoms. To the contrary, the record demonstrates that Plaintiff's symptoms are well controlled on medication and Plaintiff's mental status examinations show normal results. The Court will not reweigh the evidence. *Brown*, 192 F.3d at 496.

Because there is insufficient evidence that Plaintiff's symptoms wax and wane, the Court finds that the ALJ subsumed Plaintiff's ability to maintain employment on a sustained based within the RFC determination. *See Powell v. Kijakazi*, No. 4:20-CV-591-ALM-KPJ, 2022 WL 4477334, at *5 (E.D. Tex. Aug. 3, 2022), *adopted*, No. 4:20-CV-00591-ALM-KPJ, 2022 WL 4474148 (E.D. Tex. Sept. 26, 2022) (citing *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (absent evidence to the contrary, the ability to perform work on a regular and continuing basis is inherent in the definition of RFC, and a specific finding that the claimant can maintain employment is not necessary)). An explicit finding that Plaintiff can maintain employment is not required unless there is evidence in the record that her condition waxes and wanes in its manifestation of disabling symptoms. No such evidence was presented here, and therefore, no such finding was required.

## VI. CONCLUSION

Therefore, it is **ORDERED** that Plaintiff's motion for summary judgment, ECF No. 15, is **DENIED**. Commissioner's motion for summary judgment, ECF No. 16, is **GRANTED**. The ALJ's decision denying benefits is **AFFIRMED**.

Signed at Houston, Texas, on June 17, 2025.

                                              **Dena Hanovice Palermo**
                                              **United States Magistrate Judge**